Mr. Pollack, may it please the court. Good morning, Your Honor. Barry Pollack on behalf of appellant Victor Feliz, may I reserve one minute for rebuttal time? Yes, you may. The magistrate judge on reference from the district judge issued a detailed and persuasive opinion suppressing coerced confessions. Basically in two parts it can be broken down into. One part was what led to the defendant, Mr. Feliz surrendering and giving statements. And the other part was whether or not the police officers dictated the statements that were signed. The suppression was based on some of the most basic and important factors. Mr. Feliz was only 18. He had no experience with the criminal justice system. His mother had been arrested and as we get into the details, apparently unjustifiably arrested, was threatened with to be sent to children's services. According to the government's own brief, although I don't think it made it to the magistrate's findings, on page 7 of the government's brief, the evidence was that Mr. Feliz was crying, showing his vulnerability before making one of the statements. And on that same page of the government's brief, that the statement he gave was in at least substantial part exculpatory of mom as much as incriminating of himself, saying that his mother knew nothing about it, which of course supports the notion that the reason he was giving the statement was for fear of what was happening to his mother and his younger siblings. Importantly, and the government does not address this in its responsive brief, when the government filed its opposition to the magistrate judge's report and recommendation, its objection was pretty specific. In paragraph 6 of page 2 of the opposition to the report and recommendation, which is docket entry 70, it's not in the appendix, but it's July 3, 2012 opposition, it said, for the reasons below, there's an objection to the suppression of coerced confessions, and the reasons that were specified were a misfinding about the defendant's address and the two dictated statements having not been about the magistrate's findings that the mother had been arrested, taken to the station, tried to call her son at the- But just to move ahead, since we're reviewing the district court suppression order, and the district court reviews, it gets to make a de novo judgment, what's the error in what the district court- Only those portions that are specifically challenged should be reviewed de novo under the reviewing standards for a district judge, your honor. So, and this was pointed out on that trial counsel actually preserved that position and said, there's been no specific objection with regard to- So is that the error that the district court made? One of many, your honor, and I'll get into those. At the hearing itself, the district judge wouldn't allow the mother to testify about the threats being made as if they were hearsay, and this is in the appendix on pages 121 to 125, and you have to be careful, there's a transcript page on the top, but APPX 121 to 125, in which repeatedly the judge finds things are hearsay when they're not offered for the truth of the matter asserted. Even the process of handing the phone, the judge said this is hearsay, when the mother was handing the phone to the officer and actually very explicitly said, the district judge said, if you want to put this in, you have to call, subpoena the police, the lady police, which the mother can't testify to what she was being threatened with and what she heard the police officer say to her son on the phone. In my practice, I've seen difficult hearsay issues. This one wasn't a difficult one or a difficult four. These were some of the most clear-cut hearsay questions. These were not hearsay. They could be justified on a number of grounds. There is excitement going on. There's one effort to salvage it as an excited utterance. The government argues an excited utterance only happens when it's a third-person declarant. There was no objection below on the ground that it wasn't hearsay, is that right? There was an objection that was an excited utterance, but on the argument you're making now that it's just not hearsay at all, that was not made to the district judge? I thought that was only made on appeal. This is not the party objecting. This is the party attempting to challenge the judge's ruling. I don't think the exact words were... I thought it was only it was excited utterance was the only basis for getting it in. I don't recall the words being used by trial counsel as... Say I'm right. What does that mean for our review? First of all, the trial counsel did preserve the idea that the magistrate judge's unobjected to findings should have been honored by the district judge. Second, a party that's introducing the evidence that's so clearly non-hearsay, it would be plain error if you even got to plain error. A threat is that the children are going to go to children's services. It's not being introduced to show that the government will actually, the police officers will actually bring the children to children's services. It's being offered to show what the whole hearing was about, that there was coercion. This case is not like Huffstetler and Jacques and Cooper, the last three cases this court faced. This is the exact case this court repeatedly distinguishes about what is coerced confession. The mother's arrested. Let's start with that. As long as we're still on procedural matters, there was no error in conducting de novo review. The court could have simply acted on the magistrate judge's ruling, but it chose not to. It has de novo review. It hears only four of the witnesses, and it excludes certain testimony which had been admitted below. But then it doesn't seem to actually make a voluntariness finding. It simply says, well, it's an issue of credibility, and therefore it goes to the jury. It's an issue of credibility, and therefore it goes to the jury. And then only later does the judge say, oh, yes, by the way, I find that this was voluntary, but there's no explanation, there is no opinion, there is nothing to say why a different conclusion is reached. And under the Constitution, it does not go to the jury except as after a finding has been made about the confession, at which point the jury may consider this evidence as part of the totality of circumstances going to guilt. And so it just seems to me there's been a sort of fundamental sidestepping a basic constitutional requirement. I have to say one of many again, Your Honor, because, and this I think might address the last question, too. Certainly the district judge seemed to apply something akin to the New York rule in Jackson against Deno of saying, well, you have seven witnesses, they have seven witnesses, it's credibility. It doesn't only say this is for the jury, as the government will argue now, but says not for the judge. So the judge was not making the ruling and then saying, now you get another shot, you get a second bite at the apple. But before you get off that, though, because the written order does satisfy Jackson. So the question is, if it doesn't, I mean, just facially it does. He says, I think, I believe, you know, that it was voluntary. So having said that, why would there be a Jackson error? I guess I'm just trying to locate what is the exact error that we're identifying. I don't think the written decision satisfies Jackson. Why not? While it does purport to say I generally find the police officer's testimony more credible than the family's, it doesn't address the factors that must be considered. It doesn't say he's 18, but I don't care because here's the length of the interrogation. It doesn't have any competing analysis. And the district judge would ignore it. Well, that's an insufficient finding of voluntariness. That's different than saying there's a procedural violation that he didn't make a finding of voluntariness. Well, I don't think so, because to make the finding of voluntariness, you have to consider at least the most important of the non-exhaustive factors. Well, I don't know how much turns on this, but I guess just if you could just identify you say that one of many errors, maybe just list what the error is. One is the magistrate judge, you say he didn't follow the findings. Two, he excluded the mother from testifying. Three, basically apply to Jackson against Deno, the New York rule that was found unconstitutional. And then as you span out into the other rulings, what complicates the history is that there was another hearing that happened on bail. And I only recently noticed this, and it's in the government's brief as well, on page, I believe it's page 9 of their brief, addendum 14. The judge actually finds that because the statements were replete with detail, and in the bail order, which is at, I have page 35 of the transcript, I'm sorry, the government's brief, page 35, footnote 4, the district judge said in no small part it's due to the credible detail. Jackson against Deno and a line of cases have all said you don't decide voluntariness by looking at the detail and deciding it's credible. Even credible confessions are just as unconstitutional and just as capable of being found to be involuntary as ones that end up false because of coercive efforts, and it can never be harmless error. If I may, on the last point, if I may say one thing about my other point, Your Honor, just about the comment made at sentencing. I just know I'm out of time. Go ahead. Read in its context, district judges, as a matter of policy, have to stay out of plea bargaining processes and shouldn't be stating that the sentence should be carried over and explained to other defendants who are awaiting trial so that they give more careful consideration to accepting a very nice plea. Thank you, Your Honor. Judge Torrea. I have no questions. Thank you. Now you may sit down. Good morning, Your Honors. May it please the Court, Maria Montanez in representation of the United States, we submit that the district court did not err in denying the defendant's motion to suppress, the district court did make that determination that the confessions, both confessions, were made voluntarily by the defendant and that determination was made outside of the presence of the jury, and also the district judge instructed the defendant that he was going to leave to the jury to hear evidence regarding the circumstances on which those two confessions were made so that they could give the weight and credibility that they decided it discerned. As to the argument that the district court erred by not allowing the mother to testify regarding the alleged threats told by the agents over the phone to the defendant, the United States submits that that statement was in fact an admissible hearsay and that the reliance that the defendant made in the case of Walker is misplaced. In that case, those admissions were admitted under Rule 801, G2. Are you from the District of Puerto Rico? Yes. And with this judge, is this how he normally handles issues of confession, by saying credibility issues should go to the jury? I would not dare to summarize the decisions of, all the decisions of the judge in all the cases he handles. In this particular case, I believe the decision was made on the fact that he had already heard the testimony of the agents who explained how those two confessions were made, where was the defendant located, how he was advised of his meandering warnings, the fact that the agent's testimony was that the defendant voluntarily made those statements, that he wrote down those statements, and both of these statements were made at different times. Okay. If, in fact, the exclusion of the mother's testimony about the threats against the mother and the threats to the family is an error, is the government arguing this is harmless error? Yes, Your Honor, in the sense that the judge had already listened to the testimony of the mother, and he was discrediting her testimony. And this is reflected in the record. First, when he advises the mother not to lie, or inquires why it's so easy for her to remember details when those details benefit the defendant, but not when those details are affecting the defendants or relate to questions that are being asked by the government or the court. And also, under examination, the mother testified that the alleged threats occurred in the patrol car while they were transferring to the station on my patrol car, but then to questions placed by the government during crisis examination, she admitted that those alleged threats occurred at the stations once they were at the station, and that it was at the station when the phone was removed from her by the agents. This inconsistency was placed in the record, and we submit that the judge saw this as one of the facts to discredit that testimony. I would also like to point out, and it's also in our brief, that although the defendant decided not to testify during the denial of suppression hearing, he had testified at the suppression hearing. And at that hearing, he told the magistrate judge that it was the fell agent who had made threats regarding deportation and taking the citizens to the Department of Family. So this is another inconsistency that the court could have noted in terms of reviewing the record when he did the denial of review. But you just said could have. I mean, I guess going back to the question Judge Lynch had before, which is, this is odd. In the first round, orally, he says this is a credibility issue, does not make a Jackson finding. Then later, he purports to comply with Jackson in the written order, but the engagement with the critical issue of whether these threats were made or not, he never directly addresses one way or the other in making that conclusion about voluntariness. He just says, well, I had no evidence before me, but that's because he excluded them others. So that's kind of an odd argument to make. And then he says, I believe the agents, but that doesn't go to the question. They never said that the threats didn't come in, the people that executed the warrant. So on the key question, on which voluntariness turns and which the magistrate found, there's just nothing in his final decision that engages on that question, explains why he concludes it's not voluntary. So why wouldn't we just say, at a minimum, you got to make that, Judge, you got to make that explanation before we could conclude you should suppress. We submit that there was evidence in the record that no threats were made. The agent testifies both of them. But there was also evidence in the record that threats were made. And so I guess the question is, what do we do with the judge? He says, I'd say it's voluntary, but with no engagement with the dispute as to whether they were or weren't. And to the extent that there is any engagement, he said something that doesn't comply with Jackson, which is just that there's a credibility dispute. That's not enough. He's got to explain why he thinks it was voluntary. And what in the record suggests that the district judge has explained why he came to that conclusion? We submit that because he analyzed the defendant already was 18 years old, that he was leaving away from his mother, that he had a son and allegedly another son was coming, that he was in the use of controlled substances, that although he was not convicted, he had prior contact with the law because he had a juvenile case. Also, the fact that there were statements made regarding this defendant's attempt to DC possible cooperators, and that was part of a proffer that was made by the government regarding recordings taken from MDC. If this court understands that that statement of the mother could have or should have been turned to evidence and the judicial objection was erroneous, we submit that the defendant could have taken the stand and he didn't. And also, that evidence goes, as it is presented from the defense point, if credible, it will go towards the first statement because the mother is saying that this alleged stress was made by PRPD or local agents, officers. There is no evidence in the record that the second confession was made at 2 to 30 with a federal agent in a different agency in any way was coerced. As to that point, as to the Denover review we Counsel, doesn't it strike you a little bit as odd that we impose on federal judges when they sentence someone an obligation to give the reasons for the sentence? Sometimes it's perfectly obvious, but often we review what the articulated reason for the sentence is. And here, the finding in the written order that the confession is voluntary in the face of considerable evidence that raises doubt, it doesn't talk about a key issue. That is adequate from the government's point of view? We understand that the judge had taken into consideration the circumstances of the defendant and he made a determination that taking everything into consideration, the inconsistencies of the mother, the reliable testimony of the agents, and the personal circumstances of the defendant, that those two confessions were made voluntarily. And the judge's explanation of it is adequate? In the written order, he makes it clear why he decided. And before the written order, would you have said it was clear from the articulated reasons on the record that he had complied with his obligation? Although we understand that it might be a question if he had. The written order takes care of all of the problems. Yes. Just on that point about sort of the prejudice that might flow if we disagreed with you about the exclusion of the mother's testimony, I'm having a hard time seeing how the written order can be read to say that even if the mother had testified, I'm telling you I wouldn't believe her. He does not say that. In fact, he almost says the opposite, which is I had no evidence before me of any threats. Now he says he's entitled to have that view, apparently, because we assume from what the record shows before that it was hearsay. But if we thought he's wrong on that, there's just nothing that I see in the written order that suggests that if he had to take account of those threats that she was testifying to, he was willing to say, I don't believe a word she says. We believe that the fact that he questioned and admonished her prior... But there's no finding that she's an inherently incredible witness. No. But wouldn't that have to be the case in order for there to be a sort of confidence that there was no prejudice from excluding her testimony about the threats? Although there is no particular finding that the mother was lying, he did say that he found the agents more credible than the testimony. And this was done after she was already inquired and admonished that she had to tell the truth. But we found the fact that it was her son and that he understood that that was a difficult position. Okay. We're going to ask Judge Torea if he has some questions for you now. Yes, counsel. How much time went on between the first and second confessions? The first confession was done at 7.30 in the morning in Vega Baja and the second confession was done between 2 and 2.30 at the federal agencies in San Juan. Did the defendant at the time he gave his second confession know whether his mother was in government custody or not? They were not in custody at the time they were, the defendant was at the federal agency. From the record, we know that the parents of the defendant had already been transported to their house by local agents. That wasn't the question. Did the defendant know? There's no evidence in the record if the defendant knew that the parents were not there. Well, as far as the defendant knew, they were still in custody. I want to clarify, Your Honor, that the mother was never in custody. She was not arrested. She wasn't arrested? No, no, no. The mother of the defendant was not arrested. She was taken to the station with the siblings and the babies and the stepfather of the defendant. Who was arrested. Their stepfather was. So she accompanies her arrested husband and brings the children along so that the family is with someone who's been arrested, the stepfather, and then the son, stepson. Stepson, correct. Gets arrested. Yes. He arrives to the station after she calls him and he surrenders. And that's where she overheard the conversation with the defendant, am I correct? Well, that's not clear from the record because she first says that these alleged statements were made by the agents in the patrol car, but then she said that these statements were made to the defendant at the station, and that is not what the defendant had previously stated in a suppression hearing. None of those two. Allegedly from the defendant's point of view, the rights were made by a different agent in a different place. In any event, she overheard that conversation between an agent and the defendant, allegedly. If we believe the testimony of the mother, that is what she's saying, correct. But the government... And the government claims that that is usually her testimony about overhearing that conversation? Yes. That's correct, Your Honor. Would the government have the same position if instead of overhearing it, she had been listening on the telephone to the same conversation? Yes, Your Honor. So if you overhear a telephone conversation, you can't testify to the content of that conversation because the government claims it is her? Unless it is brought to under one of the exceptions of hearsays, as in this case could have been the defendant testifying as to... Well, the exceptions only come into play if it's hearsay in the first place. Yes. And that is hearsay? We submitted it. All right. Thank you. Thank you, Your Honor. I have a question. Do you want me to address the second point made by counsel regarding sentencing? No. Okay. I wouldn't like to hear it just as a... Go ahead. We submit that the district judge did not commit any error in sentencing the defendant as he did. After Booker, he used the protocol established in terms of the discretion of the judge and the guidance or advisory. He made the calculations correctly. He imposed a mandatory minimum sentence as to count one and the lower end as to count two. That was the request the defendant had presented also. There was no evidence for a departure or for a violence in the record. And the lecture that the judge made was done after the sentence had been imposed. So, therefore, we believe there was no mistake. It does seem to be urging people to plead guilty. Would that be appropriate? We submit that it was not the intention of the judge to induce the defendant to plead guilty. He was aware because of all the hearings this was a contested case. He was aware of the evidence that was coming. And in that sense, we believe it was much of a lecture to the defendant in terms of I will impose this sentence. If you have taken the plea, it will be less. All right. Thank you. All right. Just a minute. Judge Torea, do you have any further questions on that? No. Well, thank you. Thank you. Thank you. And had the district judge stopped there, that might not have risen to the level of an argument for our brief. But then the judge said, make sure you tell all the friends you make where you're going that they should consider pleading guilty, which is just an entirely inappropriate approach at a sentencing. If the government's new theory of hearsay on threats is what it is, this court would have to revisit countless Hobbs Act and threatening communication cases and exactly how the government routinely proves threats through third people because the people who make the threats don't usually admit them. It's that simple. I would ask the court to look at the series of hearsay rules, including handing the phone and exactly what the district judge was doing and short-cutting that evidence. I would ask the court to take a look at what the government's attorney has brought up in terms of criticizing the witness. Just so I understand what's going on here, if I understand it right, the Federal Rules of Evidence don't govern the suppression hearing at all? Well, a judge can apply. I think a district judge has within his or her right to apply general hearsay principles. It happens. It doesn't always happen. It doesn't have to be done. I'm just trying to think about how we characterize what the error is if there's an error. So is it – I mean, it's just an odd thing to say they misapplied the Federal Rule of Evidence on hearsay when the Federal Rule of Evidence doesn't apply. Well, not exactly because the judge purported to apply the hearsay rule, which would not be an abuse of discretion by itself. But if you're going to purport to do that, you've got to do it right. He mistakes the law. But Your Honors could also cite to the language that in the Fifth Amendment context, even factual issues take on a legal element when you get to coercion and voluntariness. And this court, like the district judge, can perform an archaeological dig, I think is the phrase, to make sure that what the ultimate conclusion is, is that we're not running a society with a criminal justice system that convicts people based on forced confessions. I would ask, Your Honors, since the government has made much about the district judge's criticism – I see I'm out of time. If I can finish. Finish. The criticism about the mother's credibility, take a look at what the criticism was. At one point, I believe the literal cross-examination question was, was it after 4 a.m. or was it 5.30 a.m.? I read that and I think, yes, is the answer, either way. And the response was, I didn't have a watch, because apparently one time the answer was after 4, one time it was about 5.30 when fed questions by an attorney that probably helped bring out the time. By the way, the time wasn't material on that either, and yet the judge actually criticized the mother in the middle of her testimony. If it was in front of a jury, it would be a reversible error by itself, but said you don't have to wear a watch to answer questions like this. That doesn't help the government here. Just like arresting the mother and calling it something else and threatening to deport her and to send her to children's services, doesn't help that this is not like Huffstetler, that I believe, Your Honor, was on the panel, where the person who was being threatened, there was probable cause, maybe even enough to convict. The mother's being brought into custody in a way that if we saw this happening in another country, we wouldn't think they're civilized in their system. Thank you, Your Honor. Unless there's questions. Judge Torea? I have no questions. Thank you. Thank you, Counsel. Thank you.